IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOLLY ANN WILSON and JIMMY CLARK PEE III | : : : | |
| Plaintiffs, | : : | **JURY TRIAL DEMANDED** |
| v. | : : | |
| | : | Civil Action No.: |
| FRED BEANS MOTORS OF DOYLESTOWN, INC. d/b/a FRED BEANS DOYLESTOWN SUBARU and/or d/b/a FRED BEANS SUBARU | : : : : | |
| Defendant. | : : | |

## COMPLAINT AND JURY DEMAND

### Introduction

1.      This is an action for damages brought by an individual consumer against the Defendant (named below) for significant wrongdoing, including, but not limited to violations of the Truth in Lending Act, 15 U.S.C. §§1601, *et seq*., the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq*., the Pennsylvania Equal Credit Opportunity Act, 15 U.S.C., 1691, *et seq*., and the Pennsylvania Unfair Trade Practices Act, 73 P.S. § 201-1, *et seq*.

### Parties

2.      Plaintiff Holly Ann Wilson ("Ms. Wilson", "Wilson" or "Plaintiff") is an individual residing at 8104 Grey Friars Terrace, Chalfont, Pennsylvania 18914.

3.      Plaintiff Jimmy Clark Pee III ("Mr. Pee", "Pee" or "Plaintiff") is an individual residing at 8104 Grey Friars Terrace, Chalfont, Pennsylvania 18914.

4.      Mr. Pee is the son of Ms. Wilson.  They are collectively referred to as Plaintiffs.

5.      Defendant Fred Beans Motors of Doylestown, Inc. d/b/a Fred Beans Doylestown

Subaru and/or Fred Beans Subaru (hereinafter "Fred Beans Subaru") is a business located at 830 North Easton Road, Doylestown, Pennsylvania 18902 with a corporate address at 858 North Easton Road, Doylestown, Pennsylvania 18902.

<u>**JURISDICTION AND VENUE**</u>

6.      Jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337 arises under the Truth in Lending Act (hereinafter "TILA"), 15 U.S.C. § 1640(e), the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. § 1681p, and the Equal Opportunity Credit Act, 15 U.S.C. § 1691e(f).  This is also an action for damages brought under state law for deceptive and fraudulent sales practices. This Court has supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367.

7.      Venue lies in this judicial district as Defendant engages in substantial business activity in this district and a substantial part of the events or omissions giving rise to the claim occurred within this district.  28 U.S.C. § 1391(b).

<u>**FACTS**</u>

8.      Plaintiff Jimmy Pee recently enlisted in the United States Army Reserve, which would require him to report to weekend duty once a month in Rhode Island and then basic training in North Carolina in a few months.

9.      Mr. Pee was driving a 2009 Gold Pontiac G6 with roughly 116,000 miles on it.  Mr. Pee had received this car from his grandparents.  He had never purchased a car before.

10.     Mr. Pee wanted to get a newer car given the amount of travel involved with his recent enlistment in the Army reserves.

11.     On May 13, 2016, Mr. Pee went to Fred Beans Subaru.  Mr. Pee had seen a 2013 Subaru Impreza on the internet and went in for a test drive.  Mr. Pee was told he would need a co-

signer, and Ms. Wilson agreed to co-sign.

12.    Mr. Pee and Ms. Wilson returned to the dealership so that Ms. Wilson could see the car.  Ms. Wilson completed a credit application and was told they would receive a call when financing was approved.

13.    Within two hours, Plaintiffs were told by Defendant that financing was approved. Plaintiffs would need to place a $500 down payment and provide copies of their most recent paystubs, the court order on withholding child support and Ms. Wilson's two most recent bank statements.

14.    Plaintiffs went to the dealership to purchase the Subaru.  Plaintiffs provided the requested documents with the exception of Mr. Pee's paystubs, which they were now told by Defendant were not needed.

15.    Plaintiffs and Defendant signed a Retail Installment Sale Contract ("RISC #1) which permitted Plaintiffs to purchase the car and that the payments on the car were spread over six years at an interest rate of 17.24%.  Plaintiffs provided the $500 down payment and were credited with $2,500 for trading in the Pontiac G6, even though the car was worth substantially more than that.

16.    Plaintiffs were identified as the co-buyers in RISC #1 and Defendant Fred Beans Subaru was identified as the "Seller-Creditor."  The RISC #1 provided Federal Truth-In-Lending Disclosures regarding the so-called approved financing.   The RISC #1 included a "No Cooling Off Period Clause", which stated:

> **State law does not provide for a "cooling off" or cancellation period for this sale.  After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind….**

The RISC #1 also contained a merger clause, which stated:

**This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.**

17.     In the RISC #1, Defendant Fred Beans Subaru elected to assign its interest in the RISC #1 to Capital One Finance.  The RISC #1 was not contingent on Capital One Finance approving financing.  The RISC #1 was enforceable against the parties to the agreement whether or not Capital One Finance agreed to accept the assignment.

18.     The Federal Truth In Lending Disclosures in RISC #1 were false and misleading as, among other reasons, the dealership had no intention to honor those terms if it could not assign the contract to a third-party and, as of the date the RISC #1 was signed, there was no final or even tentative agreement with any third-party to take the contract.

19.     Plaintiffs left the dealership with the Subaru.  Defendant took Plaintiffs old car as the trade in.  Plaintiffs rightfully believed the entire transaction was complete.

20.     On May 17, 2016, four days later, one of Defendant's employees called to request copies of Mr. Pee's pay stubs, although Plaintiffs were told at the signing that the paystubs were not needed.  Plaintiffs provided copies of Mr. Pee's paystubs.

21.     On May 20, 2016, James Richardson, Defendant's finance manager, called Mr. Pee to change the terms of the agreement the parties had signed and contracted to.  Mr. Richardson claimed the financing the dealership was seeking had "fallen through" and he requested that Mr. Pee pay an additional $500 "down payment".  Mr. Pee said he would just return the car, but Mr. Richardson said that was not an option.  Mr. Richardson later called back to say the additional "down payment" had been waived, but that Mr. Pee had to come in to sign new paperwork. Defendant misrepresented that Plaintiffs needed to sign new paperwork even though the RISC #1 was an enforceable agreement.

4

22.     On June 3, 2016, Plaintiffs went to the dealership to sign new paperwork, including a revised Retail Installment Sale Contract ("RISC #2).  The defendant requested that Ms. Wilson provide a copy of her paystub, although she had already provided it.   Defendant improperly backdated the new RISC #2 to May 12, 2016.  The interest rate on the financing increased from 17.24% to 19.17%, and although Defendant manipulated the numbers in the RISC #2, Plaintiffs would still end up paying more overall for the car.

23.     The RISC #2 also contained "No Cooling Off Period" and merger clauses. Defendant Fred Beans once again noted in RISC #2 that it would be assigning the contract to Capital One Auto Finance.

24.     The Federal Truth In Lending Disclosures in RISC #2 were false and misleading as, among other reasons, the dealership had no intention to honor those terms if it could not assign the contract to a third-party and, as of the date the RISC #2 was signed, there was no final or even tentative agreement with any third-party to take the contract.

25.     After rejecting RISC #1 and increasing the interest rate in RISC #2, Defendant never sent the notices required under the Fair Credit Reporting Act and the Equal Credit Reporting Act.

26.     A few days later, Mr. Pee discovered that the car Defendant had sold him was equipped with the wrong size tires and contained little tread, which were a hazard.  Defendant's employee Josh Landau told Mr. Pee to replace the tires and he would be reimbursed $450.00.  Mr. Pee replaced the tires, but has never been reimbursed.  As set forth below, Defendant took possession of the car, including the new tires.

27.     On June 16, 2016, Mr. Richardson again called Ms. Wilson seeking more copies of paystubs and bank statements for the financing Defendant was seeking, although she had already

provided the documents.  Mr. Richardson then called back a day later to say the bank didn't need the additional documents.

28.     Several days later, on June 20, 2016, Capital One called seeking substantially all of the documents Ms. Wilson had previously provided to Defendant or that it would not approve the financing sought by the dealership.

29.     Ms. Wilson then received a call from Mr. Richardson saying that there would be no financing and that Plaintiffs should return the car.  Plaintiffs agreed to return with the car and asked to have Mr. Pee's original car, the Pontiac G6, ready when they arrived.  Mr. Richardson said, "Ok. Thank you."

30.     Ms. Wilson took the Subaru to the dealership.  Defendant did not have Mr. Pee's original car waiting.  Instead, Mr. Richardson said that they had sold the car at auction and handed her a check for $2,500, which was the "trade in" credit noted on the agreement.  This amount was woefully insufficient to replace Mr. Pee's car.

31.     After rejecting RISC #2 and demanding the return of the car, Defendant never sent the notices required under the Fair Credit Reporting Act and the Equal Credit Reporting Act.

32.     At the time Plaintiffs purchased the car, Plaintiffs only authorized and were aware that Capital One would be requesting their credit reports.  Plaintiffs have subsequently learned that Defendant Fred Beans Subaru requested that numerous financial institutions obtain copies of their credit reports.  Plaintiffs' credit reports now show that Defendant requested or caused numerous financial institutions to request copies of their credit reports in connection with Plaintiffs' purchase of the Subaru.  Incredibly, Defendant Fred Beans Subaru continued to request copies of Plaintiffs' credit reports even after Plaintiffs returned the Subaru to the dealership.

33.     During the sale of the Subaru, Defendant engaged in numerous other fraudulent and

deceptive practices, including:

      a.  Representing that the Subaru had not been involved in any accidents when an inspection of the car revealed that there had been substantial body work to the car, including part of the body being secured by only zip ties.

      b.  Placing a sticker on the car indicating the car passed inspection even though there were numerous deficiencies, including tires which were the wrong size and which did not include sufficient tread and bumpers and fenders not properly secured.

      c.  Selling a car with the muffler and exhaust pipes modified to by-pass the catalytic converter.

## COUNT ONE -
## VIOLATION OF TRUTH IN LENDING ACT

34.    Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

35.    The transaction described herein was a consumer credit transaction with the meaning of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

36.    Defendant is a creditor with the meaning of TILA in that it regularly extends consumer credit that is subject to a finance charge or payable in more than four installments and is the person to whom the transaction which is the subject of this action is *initially* payable, 15 U.S.C. § 1602(f) and Reg. Z § 226.2(a)(17).  Defendant is identified as the creditor on the Retail Installment Sales Contracts at issue.

37.    It is the purpose of the TILA to assure a meaningful disclosure of credit terms in order to prevent the uninformed use of credit and to protect consumers against inaccurate and

unfair practices involving certain sales.  Meaningful and timely disclosure of the terms of financing provide consumers with knowledge of the "true" cost of credit prior to consummation of the transaction, 15 U.S.C. § 1638 *et seq.*

38.     Pursuant to 15 U.S.C. § 1638, the creditor must disclose material terms such as the finance charge, amount financed and APR.

39.     The Federal Truth In Lending Disclosures in the Retail Installment Sales Contracts were false and misleading as, among other reasons, the dealership had no intention to honor those terms if it could not assign the contract to a third-party and, as of the date the Retail Installment Sales Contracts were signed, there was no final or even tentative agreement with any third-party to take the contract.

40.     Defendant violated the Federal Truth-In-Lending Act.

## COUNT TWO -
## VIOLATION OF FAIR CREDIT REPORTING ACT

41.     Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

42.     At all times pertinent hereto, Defendant was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

43.     At all times pertinent hereto, Plaintiffs were "consumers" as that term is defined by 15 U.S.C.  1681a(c).

44.     Defendant violated Sections 1681n and 1681o of the Fair Credit Reporting Act ("FCRA") by willfully and negligently causing unauthorized and excessive credit inquiries to be made of Plaintiffs.

45.     Inquiries are listed on a credit report, and the number and frequency of inquiries noted on a person's credit file materially affects their credit score.   The credit score affects, among

other things, the ability of a party to obtain credit and the terms of the credit.

46.     Defendant also violated the FCRA by failing to provide required notices after taking adverse actions.  The FCRA provides that "[i]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report," the person must provide notice of the adverse action to the consumer and provide certain information about the consumer reporting agency that furnished the report to the person. 15 U.S.C. § 1681m.

47.     The repudiation of the RISC #1 and RISC #2 constituted adverse actions, resulting in the loss of the Subaru and Plaintiffs' original trade in vehicle.  15 U.S.C. § 1681a(k).

48.     Defendant accessed and relied upon Plaintiffs' credit reports in taking these adverse actions.

49.     Defendant never provided the required notices and thereby violated the FCRA.

50.     The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiffs that are outlined more fully above and, as a result, Defendant is liable to Plaintiffs for the full amount of statutory, actual and punitive damages, along with the attorney's fees and costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT THREE -
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT ("ECOA")

51.     Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

52.     Defendant failed to provide Plaintiffs with written notification or a statement of reasons for the rejection of the Retail Installment Sales Contracts.

53.     The Equal Credit Opportunity Act ("ECOA") requires a creditor to notify an

applicant for credit of its action on the application, and if the action is adverse, the creditor must provide the applicant a statement of reasons in writing or provide written notification with disclosure of the applicant's right to a written statement of reasons. 15 U.S.C. § 1691(d).

54.    The ECOA allows an aggrieved applicant to bring a civil action against "any creditor who fails to comply with any requirement imposed under this subchapter." 15 U.S.C. § 1691e.

55.    Defendant is a "creditor" under the ECOA, which is defined as "any person who regularly extends, renews or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).  Defendant regularly extends, renews or continues credit, arranges for the extension, renewal, or continuation of credit, or participates in the decision of whether or not to extend credit.

56.    Defendant violated the ECOA's written notification requirements, 15 U.S.C. § 1691(d), as implemented by 12 C.F.R. § 202.9(a)(2).

## COUNT FOUR -
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES

57.    Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

58.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits parties from engaging in "unfair or deceptive acts or practices" including "any … fraudulent or deceptive conduct…." 73 P.S. § 201-1 et seq.

59.    Defendant's practice of executing Retail Installment Sales Contract listing Truth In Lending Disclosures is an unfair, deceptive and fraudulent act or practice.  Defendant issues these contracts even though it has no intention of honoring the terms of the agreements in the event the

dealer cannot obtain a third-party who is willing to accept assignment of the agreement.  As a result, the unknowing and unsophisticated consumer drives off the dealer's lot with a new car and the erroneous belief that the transaction is complete on the terms the parties had agreed on.

60.     Defendant further misleads the public, including Plaintiffs, by later telling them that the dealer has the right to revoke or renegotiate the Retail Installment Sales Contract or that it is not enforceable in the event the dealer is unsuccessful in assigning the contact to a third-party financial institution.

61.     As part of Defendant's unfair, deceptive and fraudulent practice, sometime after the parties sign an enforceable Retail Installment Sales Contract and the purchaser takes possession of the car, Defendant demands that the purchaser put down additional down payments or agree to more costly financing terms in order to keep the car.  This practice is known as "Yo-Yo" financing.

62.     Defendant engaged in additional fraudulent and deceptive acts as set forth above.

63.     The foregoing fraudulent statements were intentionally made or made with reckless disregard for the truth.

64.     As set forth above, Plaintiffs were injured by Defendant's unfair and deceptive practice and are entitled to an award of, among other things, treble damages.

**COUNT FIVE -
BREACH OF CONTRACT**

65.     Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

66.     The Retail Installment Sales Contract #1 was an enforceable agreement whether or not Defendant was able to assign the contract to a third-party.

67.     Defendant's repudiation of RISC #1 is a breach of that contract.

68.     Defendant also agreed to reimburse Plaintiffs' for new tires placed on the Subaru.

Defendant has failed to do this and is in breach of that agreement.

69.     As set forth above, Plaintiffs suffered damages as a result of Defendant's breach.

## COUNT SIX -
## UNJUST ENRICHMENT

70.     Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

71.     As part of the parties' dealings, Defendant took possession of Plaintiffs' "trade-in" vehicle, a Pontiac G6, and resold it.  Defendants have kept the proceeds of the sale.  Plaintiffs have returned the car they had received from Defendant.

72.     Plaintiffs placed new tires on the Subaru that they returned to Defendant.  The tires on the Subaru at the time Plaintiffs purchased it were the wrong size and had no tread.

73.     It would be unjust to permit Defendant to retain the amount it received from the sale of Plaintiffs' Pontiac and the value of the tires Plaintiffs placed on the Subaru before returning it.

## COUNT SEVEN -
## FRAUD

74.     Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

75.     As set forth above, Defendant made material misrepresentations about the financing provided to Plaintiffs to purchase the Subaru.

76.     The terms of the financing were material terms of the Retail Investment Sales Contracts.

77.     As set forth above, Defendant made these statements falsely, with knowledge of their falsity or recklessness as to whether it is true or false.  More specifically, Defendant had no

intention to honor the terms of the contract unless it was able to find a third-party who would accept assignment of the contract.

78.     Plaintiffs justifiably relied on the financing terms set forth in the Retail Installment Sales Contracts.

79.     Defendant intended to mislead Plaintiffs into relying on them.

80.     Plaintiffs were injured and this injury was proximately caused by their reliance.

**COUNT EIGHT –
<u>NEGLIGENT MISREPRESENTATION</u>**

81.     Plaintiffs incorporate by reference the preceding allegations of the Complaint as if set forth herein at length.

82.     As set forth above, Defendant made material misrepresentations about the financing provided to Plaintiffs to purchase the Subaru.

83.     The terms of the financing were material terms of the Retail Investment Sales Contracts.

84.     As set forth above, Defendant made these statements falsely, and Defendant should have known the falsity of the statements.  More specifically, Defendant had no intention to honor the terms of the contract unless it was able to find a third-party who would accept assignment of the contract.

85.     Plaintiffs justifiably relied on the financing terms set forth in the Retail Installment Sales Contracts.

86.     Defendant intended to mislead Plaintiffs into relying on them.

87.     Plaintiffs were injured and this injury was proximately caused by their reliance.

**<u>JURY TRIAL DEMAD</u>**

13

88. Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

89.     WHEREFORE, Plaintiffs seek judgment in Plaintiffs' favor and against Defendant

for actual damage, statutory damages, punitive damages, treble damages, attorneys' fees and costs

and such other relief as the Court may deem necessary, just and proper.


Respectfully submitted,

**THE KIM LAW FIRM, LLC**


*/s/ Richard H. Kim*

By:  Richard H. Kim, Esquire
Kevin Kotch, Esquire
Attorney I.D. Nos.: 202618/70116
911 Arch Street, Suite 101
Philadelphia, PA 19107
Ph. 855-996-6342
Fax 855-235-5855
rkim@thekimlawfirmllc.com
kkotch@thekimlawfirmllc.com

Attorneys for Plaintiffs Holly Ann Wilson and
Jimmy Clark Pee III

Dated:  August 31, 2016